Nones, Demandante y Apelante, *v.* Sucesión J. Serrallés, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre daños y perjuicios.—Moción sobre apertura de rebeldía y nulidad de sentencia.

No. 2411.—Resuelto en julio 22, 1921.

Daños y Perjuicios—Sentencia Anulando Otra Dictada en Rebeldía—Apertura de la Rebeldía—Affidávits de Méritos Defectuosos.—La mera circunstancia de que *affidavits* de méritos presentados por la parte demandada solicitando la apertura de rebeldía sean defectuosos, no es motivo suficiente para revocar la sentencia que anulando una dictada en rebeldía, abrió el caso nuevamente.

Id.—Rebeldía—Término para Pedir la Nulidad de Sentencia en Rebeldía.—Examinados los hechos que constan en la opinión dictada en este caso, el Tribunal Supremo resolvió que el defecto técnico, si lo es, de pedir la nulidad de la sentencia fuera del término en que la rebeldía fué anotada o de dejar de justificar expresamente la demora en pedirla no es bastante meritorio para revocar la sentencia que abrió la rebeldía.

Id.—Sentencia Anulando Rebeldía—Discreción Judicial.—A menos que se demuestre la existencia de un claro abuso de discreción, una orden anulando o negándose a anular una sentencia en rebeldía no será revocada en apelación.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. J. y A. Poventud.*

Abogados de la apelada: *Sres. F. Parra y J. Tous Soto.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Adolfo Nones apela de una resolución dejando sin efecto una sentencia en rebeldía y abriendo nuevamente el caso.

Los hechos y las razones en que la corte sentenciadora fundó su resolución han sido bien expresados por el juez de distrito en su opinión, a saber:

"Este pleito fué iniciado por demanda jurada, el 18 de junio de 1920, en el cual día quedó emplazada la demandada. En junio 26 el abogado de la demandada obtuvo una prórroga de 5 días, a partir del día 28 para contestar o alegar lo que en derecho procediese. Aparece del récord que más tarde radicó una excepción previa, cuya vista se señaló para el día 12 de julio y que en la misma fecha la demandada retiró su excepción, concediéndole la corte 10 días para contestar la demanda. En noviembre 26 de 1920, solicitó y obtuvo el demandante la anotación de la rebeldía de la demandada, fundándose en haber transcurrido con exceso el término legal, desde la última prórroga solicitada, sin que la demandada presentara alegación alguna y haciendo aplicación del inciso primero, artículo 194 del Código de Enjuiciamiento Civil, el secretario anotó la rebeldía, registrándose inmediatamente una sentencia contra la demandada, condenándola a pagar al demandante la suma de $25,000, reclamados por ésta en concepto de daños y perjuicios y los intereses legales de dicha suma desde la interposición de la demanda hasta su completo pago.

"En diciembre 15 presentó la demandada una moción solicitando que se deje sin efecto la sentencia y la anotación de la rebeldía, la cual moción fué posteriormente sustituída por otra con la conformidad del demandante. La demandada acompaña a su moción un escrito de contestación a la demanda, el cual está jurado y se ofrece además para que surta los efectos de un *affidavit* de méritos.

"La moción a que nos contraemos está hecha bajo el juramento del abogado de la demandada y alega sustancialmente que con posterioridad al término para alegar concedido por la corte, los abogados de ambas partes en este pleito convinieron privadamente con motivo de un viaje del abogado del demandante tenía para los Estados Unidos, que efectivamente realizó, y por no ser muy urgente la radicación de la contestación toda vez que la corte estaba sin juez y no había realmente prisa en tener preparado el caso, en que la demandada contestaría al regreso del abogado del demandante de los Es-

tados Unidos. Que tan pronto dicho abogado volvió a Puerto Rico y allá hacia el 16 ó 17 del mes de noviembre pasado el abogado de la demandada le visitó y como resultado de dicha entrevista llegó a la conclusión por su parte, de que el abogado del demandante aceptaba que la demandada podría presentar su contestación en cualquiera de los días de esa o de la siguiente semana; que descansando este abogado en tal creencia, recibió la notificación de que en la corte de distrito se había registrado sentencia en rebeldía en contra de la demandada el día 26 del mismo mes de noviembre, o sea dentro del tiempo que consideraba por su parte como convenido entre ambos abogados para la contestación. Que según información del abogado que suscribe dicha rebeldía fué anotada no con la intención de mantenerla en vigor sino exclusivamente con la de apurar la contestación. Que dicha sentencia es nula porque fué registrada por el Secretario de la Corte de Distrito de Ponce en momentos en que esta corte no estaba en sesión ni debidamente organizada, pues ningún juez había sido nombrado para ella ni en propiedad ni interinamente.

"Que aún en el caso de que la corte considerara que por los hechos expuestos con el número uno de esta moción, no debe ser abierta la rebeldía, la sentencia es nula y no tiene valor por haber sido registrada por el secretario de esta corte en exceso de las facultades que le concede el artículo 194 del Código de Enjuiciamiento Civil, toda vez que en este pleito se trata de obtener daños y perjuicios por incumplimiento de contrato en cuyo caso después de anotada la rebeldía debe ser el pleito visto por la corte para liquidar los daños y perjuicios.

A petición del abogado proponente de la moción, la corte señaló el día 23 del corriente mes para la discusión de la misma, a cuyo acto comparecieron las partes representadas por sus abogados respectivos. El demandante presentó una oposición jurada a dicha moción y varias declaraciones juradas. Un examen cuidadoso de la moción de la demandada y de los *affidavits* del demandante demuestran que a partir de la última prórroga concedida por la corte a la demandada se vinieron concertando prórrogas extrajudiciales entre los abogados del demandante y el abogado de la demandada, que culminaron en protesta del demandante quien insistía con su abogado para que se anotara la rebeldía de la demandada y no se le concediesen más prórrogas para contestar, a pesar de lo cual el abogado del demandante, por razones de compañerismo hacia el abogado de la demandada concedió varias prórrogas hasta el mes de octubre de 1920, en que teniendo uno de los abogados del demandante necesidad de hacer

un viaje a los Estados Unidos se convino entre ambos abogados que el de la demandada tendría derecho a contestar la demanda durante todo el tiempo que el abogado del demandante estuviera ausente. Al regreso de éste el abogado de la demandada le visitó en la oficina y celebraron una entrevista como resultado de la cual convinieron en que el abogado de la demandada dispondría de otra prórroga para contestar la demanda. Hasta aquí existe perfecta conformidad entre los abogados. La discrepancia surge con motivo de la extensión de la última prórroga, alegando el abogado de la demandada que de la entrevista referida él llegó por su parte a la conclusión de que la demandada podía presentar la contestación en cualesquiera de los días de la semana en que celebraba la entrevista o de la siguiente semana, estando por lo tanto el día 26 en que se anotó la rebeldía y se registró la sentencia, incluído, según el entender de dicho abogado, dentro de la prórroga que le fué concedida últimamente. Y por otra parte afirma el abogado del demandante que dicha prórroga fué concedida hasta noviembre 20, por lo cual la rebeldía anotada y la sentencia registrada no están incluídas dentro del término de dicha prórroga.

"La demanda versa sobre daños y perjuicios por incumplimiento de un contrato que, según alega el demandado por información y creencia celebró la demandada con Louis Falley, otorgándole una opción que duraría hasta las 9 de la mañana del 9 de abril de 1920 para la compra de cinco mil sacos de azúcar lavada de 125 libras cada uno, netas, de la Central Mercedita, propiedad de la demandada, al precio de $15 el quintal, f. o. b. Ponce, para embarque y entrega en o antes de abril 30, 1920, debiéndose pagar tal precio contra entrega de los documentos de embarque por la demandada a la que se debía garantizar el referido precio por un banco. Alega el demandante que Louis Falley, en abril 8 de 1920 cedió dicha opción u oferta por medio del agente y comisionista de Ponce, don Rafael Collazo, al demandante don Adolfo Nones, por precio de $15.50 el quintal de azúcar y el demandante en el mismo día 8 de abril de 1920, antes de expirar la ameritada oferta aceptó e hizo comunicar la opción de dicha oferta a la demandada por conducto de su apoderado el S. Giles, e informándole que el Banco Comercial de Puerto Rico se había obligado a garantizar el indicado precio fijado por la demandada; la que entonces alegó por medio del Sr. Giles que la opción referida había expirado por lo que rehusaba cumplir dicho contrato, y siendo así que tal oferta no vencía hasta el día siguiente, abril 9, 1920 a las 9 a. m. Que la demandada no ha cumplido y

aún rehusa cumplir el ameritado contrato habiéndose negado a embarcar y a entregar para el demandante los cinco mil sacos de azúcar, a pesar de haber sido requerida al efecto por el demandante. Que ha cumplido y está dispuesta a cumplir cuanto le incumbía bajo dicho contrato y su cesión, así como también su indicado trasmitente, según información y creencia del actor.

"De acuerdo con la información y creencia del demandante, el valor en el mercado de dicho azúcar objeto del referido contrato, llegó a ser en y después de fines de abril de 1920, la suma de $20 el quintal, que implica cantidad mayor de $25,000, sobre el precio convenido en el contrato de cesión para el demandante y que constituye el importe de los daños y perjuicios sufridos por el actor, debido al incumplimiento del tal convenio por la demandada, que vendió dicho azúcar a más de $20 el quintal. Termina la demanda suplicando una sentencia en favor del demandante y en contra de la demandada, condenando a ésta a pagar a aquél la suma de $25,000 con los intereses legales.

"La demandada, en su contestación jurada niega la existencia del contrato alegado en la demanda como concertado entre la demandada y Louis Falley y alega como defensa la existencia de un contrato hecho entre el señor Mauricio Falley, como agente en Puerto Rico de The Maxim Chemical Company, de New York, en cuya virtud la demandada le cotizó azúcar lavada a $13.50 por quintal f. o. b. embarcado en Ponce y le dió hasta marzo 31 para recibir la contestación al ofrecimiento, siendo condición especial que los compradores depositarían al mismo tiempo el importe de la mercancía en el Royal Bank of Canada de Ponce; que esta venta de cinco mil sacos de azúcar fué confirmada por telegrama del Sr. Mauricio Falley en marzo 31 de 1920, afirmando además que había sido abierto en el Royal Bank of Canada un crédito a favor de la demandada de acuerdo con lo convenido. En abril 1, 1920, o sea el día siguiente el Royal Bank of Canada en Ponce, negó tener tal crédito abierto a favor de la demandada. Sigue exponiendo la demandada diversos hechos tendentes a demostrar que la compradora del azúcar, The Maxim Chemical Company por medio de su representante Sr. Mauricio Falley y luego por medio de Louis Falley como representante de su hermano Mauricio, solicitó y se le concedió algunas pórrogas, para que enviara los fondos necesarios para el pago de la mercancía y que no habiendo llegado estos fondos hasta las 9 de la mañana del 9 de abril de 1920, la demandada dió por rota y nula la negociación.

"Niega la demandada que la firma compradora del azúcar o sea

la Maxim Chemical Company cediera al demandante sus derechos en la negociación referida y niega que la demandada concediera en época alguna a Louis Falley, el derecho de comprar el azúcar de dicha demandada; así como que el referido Louis Falley, formalizara en época alguna con el demandante la cesión de algún supuesto derecho a comprar azúcar de la demandada.   Niega la demandada otros hechos y concluye afirmando que la demandada vendió el azúcar que comprometió con la Maxim Chemical Company a $18 y no a $20.

"Las declaraciones juradas, la demanda y contestación que hemos transcrito sustancialmente son los elementos de que disponemos para resolver si en este caso concurren los requisitos y circunstancias que el artículo 140 del Código de Enjuiciamiento Civil, exige para otorgar el remedio que ahora solicita la demandada.

"Nuestra Corte Suprema en el caso de '*Gutiérrez* v. *Foix,* 23 D. P. R. 73, 75, y en el de *Fernández* v. *Pescay et al* 26 D. P. R. 813,' expone el criterio liberal con que debe ser interpretado el artículo referido: 'Este es un precepto reparador, y, de acuerdo con las prescripciones 4o. del propio Código el cual exige que sea liberalmente interpretado con el fin de que se cumplan los fines y promueva la justicia, se observa mejor resolviendo los casos por sus méritos sustanciales más bien que atendiendo estrictamente a las reglas técnicas de procedimiento.   La discreción de la corte debe siempre ser ejercitada de conformidad con el espíritu de la ley y de tal modo que más bien ayude que impida o destruya los fines de la justicia, considerando los meros tecnicismos como obstáculos que han de ser vencidos más bien que como principios a los cuales ha de darse efecto en derogación del derecho sustancial.'

"No hay duda que este artículo por amplia que sea la liberalidad con que debe ser interpretado no sanciona de ningún modo el abandono o la negligencia grave e inexcusable de un litigante que revela por sus actos carencia de interés en la acción que tenga pendiente en un tribunal de justicia.   Pero el artículo tiende, de acuerdo con la doctrina transcrita, a excusar la equivocación, inadvertencia, sorpresa o excusable negligencia de un litigante, cuando alguno de estos elementos interviene, al amparo de tecnicismos legales, para evitar que se haga justicia sustancial fundada en el fondo y en los méritos equitativos y legales que informen el asunto que se ventile.

"En esta moción, el abogado de la demandada alega que si él dejó expirar la última prórroga que le concedió el demandante, ha ocurrido bajo la influencia de un error sufrido por él en cuanto a la extensión de dicha prórroga.   *   *   *   El afirma bajo juramento que él sacó

la conclusión de que era más largo el tiempo que se le concedía y si bien el abogado del demandante afirma que el tiempo concedido fué expresamente fijado hasta el 20 de noviembre, sin embargo, la aseveración jurada del abogado de la demandada, teniendo en cuenta la actitud benévola del abogado del demandante, que le había concedido anteriormente varias prórrogas por convenios verbales, nos induce a creer que el abogado de la demandada pudo razonablemente caer en el error de entender que la prórroga había sido por mayor tiempo y que el abogado de la demandante no le anotaría la rebeldía.

"No es el primer caso en que sucede esta clase de equivocaciones debido a convenios verbales de los abogados y nuestra misma Corte Suprema, ha sostenido fallos ordenando aperturas de rebeldías, en los cuales, como un incidente de la cuestión, ha surgido una errónea impresión de un abogado con respecto a los verdaderos términos de una estipulación. '*Gutiérrez* v. *Foix*, 23 D. P. R. 73, 75, y en el de *Santana* v. *Gelabert, Sociedad en Comandita, et al.,* tomo 26 D. P. R. 201.'

"Este pleito es de gran importancia por la cuantía de los daños que se reclaman y delicado por el carácter de la acción misma que se ejercita.

"En una buena y recta administración de justicia no debe existir ninguna sentencia sobre la propiedad, libertad, o cualquier otro interés de un ciudadano si no está fundada en la verdad y en la realidad de las cosas, en la medida que le es dable encontrar la verdad al limitado entendimiento humano. En este caso la demandada niega la existencia del contrato que ha dado lugar a los daños y perjuicios reclamados. La cuantía de estos daños y perjuicios está también negada y controvertido el precio en que se vendió el azúcar. Una sentencia registrada mecánicamente sin haber penetrado en los méritos de las cuestiones controvertidas, nos expondría a condenar una parte sin tener la seguridad en nuestra propia conciencia de que tal sentencia corresponde a hechos comprobados y a los dictados de la verdadera justicia.

"Si de acuerdo con la doctrina de nuestro más alto tribunal, la discreción de la corte, debe ser siempre ejercida de conformidad con el espíritu de la ley de tal modo que más bien ayude que impida los fines de la justicia, estimamos que la discreción de esta corte, en el presente caso, debe ejercerse de tal modo que las cuestiones y los derechos envueltos puedan ser ventilados con toda amplitud y el más recto espíritu de justicia y de garantía para todos los interesados. Si ocurriere que en este caso la conducta del abogado de la demandada hubiese entorpecido o demorado la tramitación de este pleito,

con perjuicios para el demandante, probablemente sería distinta la opinión de esta corte; pero es un hecho de conocimiento judicial para el juez que suscribe, que desde el mes de julio de 1920, hasta la fecha, esta corte, no estaba en condiciones de celebrar términos de casos civiles; primero, por las vacaciones del juez propietario y después por la licencia concedida al mismo y la presentación posterior de su renuncia; que entre tanto sólo han presidido esta corte, por pocos días dos jueces sustitutos que entendieron en el despacho de asuntos criminales y asuntos civiles de carácter urgente, la mayor parte de jurisdicción voluntaria, remedios extraordinarios y. otros de similar carácter, hasta el día 21 del presente mes en que se hizo cargo el que suscribe como juez propietario.

"No ha habido, por consiguiente perjuicios para el demandante, que pudieran servir de contrapeso a los perjuicios a que estaría expuesta la demandada si no se le permitiera defenderse en este asunto.

"Somos, por tanto de opinión, apreciando el error sufrido por el abogado de la demandada, teniendo en cuenta que su contestación contiene defensas meritorias y para cumplir mejor los fines de la justicia, que debe declararse con lugar la moción presentada por dicho abogado, y, en su consecuencia, se deja sin efecto la sentencia registrada por el secretario de esta corte, en este caso, con fecha 26 de noviembre de 1920, se ordena la apertura de la rebeldía anotada y se admite la contestación radicada, quedando el caso sujeto al procedimiento ordinario de tramitación.

"Ponce, P. R., diciembre 24, 1920.   (f) R. Rivera Zayas, Juez del Distrito."

Los siguientes errores han sido alegados:

"1. Erró la Corte de Distrido de Ponce al no estimar insuficientes los *affidavits* de la demandada-apelada en este caso, otorgado uno por el abogado de la demandada al pie de la moción para abrir la rebeldía, y el otro por el apoderado de la demandada al final de la proyectada contestación que se acompañó a la predicha moción; así como al estimar como *affidavits* de méritos a los mismos;

"2. Cometió error dicha corte inferior al no estimar extemporáneamente presentada, e insuficiente, la ameritada moción para dejar sin efecto la sentencia en rebeldía en este caso;

"3. La corte inferior erró al estimar que hubo negligencia excusable, o motivo suficiente alguno, para dejar sin efecto la sentencia registrada en este caso; y

"4. Erró la corte inferior, en consecuencia, al dictar la orden apelada dejando sin efecto la sentencia en rebeldía en este caso."

La mayoría de los casos citados por el apelante en el primer señalamiento de error pueden distinguirse sobre los hechos, y la contestación a aquella parte de la argumentación que no ha sido de tal modo resuelta puede hallarse en el caso de *Sucesores de Villamil & Cía.* v. *Merced et al.,* 25 D. P. R. 237.

La teoría sustentada en el segundo señalamiento es que la moción debió haberse presentado durante el mismo término en que la rebeldía fué anotada, o si no que debió haberse demostrado por qué no se hizo antes de vencer dicho término. Parece que el término en cuestión venció a fines de noviembre y que la moción fué radicada en diciembre 15. Pero de la opinión emitida por el juez sentenciador a la cual se ha hecho referencia, aparece que la corte estuvo sin juez hasta diciembre 21; y en vista de esto y de las demás circunstancias mostradas por el demandado y arriba mencionadas, no estamos dispuestos a intervenir con la conclusión a que llegó la corte inferior debido a un defecto técnico, si lo es, consistente en dejar expresamente de justificar la demora haciendo una referencia específica al término anterior de la corte.

En cuanto al tercero y cuarto señalamientos, será bastante con decir que no encontramos semejante abuso en la amplia discreción ejercitada por las cortes de distrito en cuestiones como ésta que justifique una revocación.

La resolución apelada debe ser confirmada.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.